Case number 22-1146 et al., 4 River Residents Against the Compressor Station et al., Petitioners v. Federal Energy Regulatory Commission. Mr. Hayden for the Petitioners, Mr. Fish for the Respondents, Mr. Marwell for the Respondent Interviewers. Good morning, Council. Mr. Hayden, please proceed when you're ready. Sure. May it please the Court, Madam Clerk, Your Honors, Michael Hayden on behalf of the Petitioners, and with me also is Town of Braintree Town Solicitor Crystal Huff. This is my first argument before this Court. It's the second visit I've made to this courtroom following a 2018 visit on this same matter, where I filed an intervener's brief. Judge Millett and Judge Tatel were on the panel, and given the circumstances described by Chief Judge Vinovacin concerning today's retirement, it's an honor to be back and arguing before this specific panel. The Petitioners in this case are two municipalities, two citizen groups, and two individuals. The intervener, Algonquin Gas Transmission LLC's brief notes that the Atlantic Bridge project is a $627 million expansion of certain interstate natural gas pipeline and related facilities. The Petitioners' challenge in this matter pertains only to a single facility associated with that project, the natural gas compressor station located on a peninsula in Weymouth, Massachusetts, which does have some historical significance. It's actually the location of the second oldest settlement of the English settlers, the Wessagusset Settlement, which was settled in 1622, two years after the Plymouth Settlement was settled. This natural gas compressor station facility was shoehorned into this $627 million project where it never belonged. And what's worse, the gas company that built it touts a different electric motor-driven compressor option in its company literature that is emissions-free. There was no environmental impact statement prepared by the Commission in this case. Rather, an environmental assessment was prepared, which evaluated the electric motor-driven compressor option and rejected it, ironically, on the grounds that it would take too long to build back in 2015. Two extremely frustrating developments to the Petitioners form the factual underpinnings for this consolidated appeal. First, Congressman Stephen Lynch wrote a letter to the Commission in January of 2018, noting that the deadline for Algonquin to complete construction and place the compressor station in operation was arriving one year later, in January 2019. And Congressman Lynch asked the Commission not to extend that two-year deadline. The Commission responded in March of 2018 by advising the Congressman that no request had been presented to it, and therefore there was no extension request for the Commission to consider at that time. And yet, just a few months later, on December 26, 2018, the Commission circulated to its distribution list on the morning after Christmas a letter request by Algonquin to extend the two-year deadline to complete construction and to place this facility in operation. Within 34 minutes, the Commission posted an approval of that request for a two-year extension in a letter order signed by Richard Foley, Chief Certificate Branch 1, approving that extension the same morning that the request had been filed. There's no evidence in this record that there was any sub-delegation confirmed to Mr. Foley, and there's certainly no evidence of what, if any, consideration Mr. Foley gave to that request. So our decisions contemplate that no matter what one might say about those kinds of questions, that the Commission in full can ratify the decision in a way that then precludes the kind of challenge that you've made in your briefs and it sounds like you're making now. What's your response to that? Thank you, Chief Judge Srinivasan. The response to that is the Commission abused its discretion and exhibited a complete and utter lack of reasoned decision-making in ratifying how that letter order was issued the morning after Christmas. Did you make that argument in your brief? Yes. In response to the question that the Chief Judge does ask about ratification? Yes, so the distinction that I'm drawing here, and thank you for both questions. The distinction that I'm drawing here is not that the Commission, upon independent grounds, having conducted a full inquiry of whether a two-year extension was warranted. That's not what happened here. What the Commission said, the Commission actually explained that even though the 34 minutes looked suspicious, that the Commission was aware that the deadline was approaching and that the employees of the Commission were actively considering a two-year extension before the request was even made. That's the explanation for why the 34 minutes was not too short a period of time. But that explanation is completely belied by the response that the Commission gave to Congressman Lynch. When Congressman Lynch wrote and said, I see this deadline coming, I want this Commission to focus on the potential harm that this facility will have on my constituents, the Commission didn't write Congressman Lynch a letter explaining, we're aware that the deadline is approaching, we need to have this discussion. All the Commission said to Congressman Lynch was, no request has been made, there's nothing for us to answer here. And so the abuse of discretion and the lack of reasoned decision-making is not by articulating an independent and separate basis for why this extension should have been granted. I would agree that would be a much more difficult case for the petitioners to appeal. What the Commission has done is they've sought to ratify this 34-minute decision-making process without evidence of subdelegation. And it's the threat of this court's affirmance that 34 minutes is okay for all future extension requests that should be gravely considered here. Because it's not a question of whether under independent review the actions of the Commission can be justified. The Commission has sought to ratify this ill-considered, completely rushed, 34-minute decision, which provided all parties in this action with absolutely no notice. But the Commission didn't just sign off and say, we're good with the 34 minutes. It made its own determination that there was good cause for an extension. It made its own decision. And I haven't understood your briefs here to dispute that independent finding of good cause. So there was good cause at that time on December 26th to grant the extension. You don't contest that. You may personally, but in your brief, your blue brief, I didn't read you and tell me if I'm wrong to have contested that the reason the good cause cited Al Gwonquin's efforts to obtain permits and its inability to do so and just sort of drawn out litigation processes is arbitrary and capricious or lacks substantial evidence. The way I would answer that, Judge Millett, is the petitioners can agree to disagree with the Commission as to whether that separate review was appropriate or not. But, yes, I don't have the evidence to submit to this panel to explain why an independent review of the two-year extension request would have been an abuse of discretion. The challenge that we raise is that they package together a ratification of the 34-minute approval so that for all future proceedings, that still is available to the Commission. And much of what the petitioners have done is only available to the Commission. One, the Commission said it was changing its processes, which I haven't understood you to challenge that to be true. So that would take care of some concern. And two, as long as the Commission gives lawfully proper, appropriate explanation and finding of good cause that is unchallenged, what is the harm that you're concerned about going forward? The precedent that this ratification has set. How does that injure you, your clients? Well, the injury is that the approval was granted on the day after Christmas without my clients having any opportunity to present their case. And then they had full opportunity of rehearing and their arguments and they made submissions and they were heard and a decision was made that is not challenged. So what after the Commission's rehearing decision, how are they injured by we just don't like you smiling upon a 36 minutes, 34 minute approval process? Understood. So the injury and the convenience of this consolidated appeal is that both segments, both factual underpinnings go together. What should have happened in the injury sustained by my clients, the way the Commission handled this extension request, as is evidenced by the letter written by Congressman Lynch, is there was not a full and open opportunity to present the environmental justice concerns that this community had from day one continues to have to this day at that moment where the two year extension was being considered. There should have been a complete, but you were able to make all that presentation to the Commission in your rehearing petition. And we have you did in your rehearing petition. So. Today, how are they injured today? We are injured because there has never been any substantive environmental justice review ever for this project. Sounds like attack on the certification or it. Well, and I do want to be careful about that. So it's not to mount a collateral. So the certificate order was presented to this court. It was affirmed in 2018. That's completely understood what's happened since that time is that there's been a material change in the core circumstances surrounding the authorization of this facility. The material changes include the coven 19 pandemic, the attorney general's report written on the adverse overly adverse consequences. The pandemic has had upon environmental justice populations in Massachusetts. And the three unplanned emergency gas releases that occurred that triggered offensive corrective action investigation. And did you raise all of those deferred and rehearing? Yes. Okay. And then they, they ruled and you haven't challenged it. So, again, I'm so you've, you've raised all that you've had your day in court as it were to make that to make those presentations. And they were made and occurred them, but for through a different conclusion from the record that is unchallenged here. So I'm asking again. You said our injury is we never got to do it. But then you said we did get to do it. So now that FERC has ruled has heard you, you've said everything. And then there was that whole other order on briefing. I mean, you've had rounds of saying everything you wanted to say to them. But in particular, after the rehearing on the extension request, I'm still struggling to understand what the injury is. Thank you. And the injury is after the second round with the order on briefing and the opportunity to submit supplemental briefs, which is the second factual underpinning for this appeal. The impact to an environmental justice community alone is sufficient for the commission to deny a ruling of public convenience and necessity for all future project applications. So, everything that we've argued in this case for every new project, going forward, is grounds for the commission to have a second hearing. The commission to rule that this compressor station should not be authorized. And the thought that our clients have to live and breathe and work and recreate immediately in the actual physical space with this compressor station for the next 50 years as it operates 24 hours a day, 365 days a year, that is the harm. They have never received the due consideration that they are entitled to as environmental justice communities, even dating back to the 1994 executive order, which requires this for all commission projects. The only conclusion that the environmental assessment reached was what there would be temporary benefit to the local community with additional jobs during construction and tax benefits resulting from the compressor station. Let me just interrupt you. I hear what you're saying, and I've read your briefs, and there are members of the commission who agree with you that this was not FERC's finest hour. But let me just ask you, I don't mean to be technical about it, but this is the way we look at issues like this, okay? So take the issue about your claim that the branch chief lacked authority, right? That's one of your arguments. As the chief judge pointed out, in the FERC's brief, they said, well, the commission ratified that, and it relies on our opinion in Murray Oil. And then in the reply brief, I didn't see any response to that. So to us, that's a waiver. Not a waiver, but that issue is gone. You didn't respond to the commission's ratification relying on Murray. Same thing with your argument that the branch chief's order was arbitrary and capricious, right? Again, the respondents say, well, we have the petition, the commission's denial of re-hearing before us, which directly responded to all of your arguments. And again, and they relied on Murray, and again, you didn't respond to that in the reply brief. So when I look at that, I think, okay, these issues were done. That's it. You didn't respond to the commission's argument. Thank you, Judge. What's the matter with that? Thank you, Judge Fadel. I'd like to address that, if I could. Go ahead. In the eight years that my clients have been opposing this compressor station, we've achieved a number of PYRIC victories. We have a new Massachusetts environmental justice law that does not apply to this station. It's the same here. Through our advocacy, FERC now has an updated policy statement that will protect future environmental justice populations. We're very happy with that development. We don't rest there. We are seeking environmental justice review for my clients and a PYRIC victory in vacating the ratification of the 34-minute approval of the two-year extension to remand back to the commission for purposes of potentially rubber stamping what has already happened. I recognize that with Chairman Glick's, the lack of the Senate confirmation hearing, now the commission is down to four, inviting deadlock going forward. I recognize it is a mountainous uphill climb for my clients to expect any change to occur before FERC. So we don't expect it to happen voluntarily. It is only going to happen through the influence of the courts. And even if everything that you've described, Judge Fadel, means that our victories will be PYRIC in nature, we still implore this court to consider them. Can I ask you, a lot of what we talked about this morning is on 22-1146. I think that's where a lot of the questions come up about ratification and the 34 minutes and the subdelegation. On the other petition, 1147, the commission and the intermediators make the argument that there's no jurisdiction to consider that because you're only challenging, you only identified the order being challenged as the rehearing order in 2022, not the 2020 authorization order. And that's the one that should be identified as the one that you're challenging for purposes of jurisdiction because if you were challenging the 2022, the author is rehearing order alone. I think there's some law that indicates that you would have needed to have sought rehearing of that. And then in your reply brief, in a couple of places you specifically say you're not challenging the 2020 authorization order. And you say that on footnote one on page five and then on page six and then on page seven again, clarify that you are actually not challenging the 2020 authorization. Correct. May I respond, Mr. Chief Judge? Yeah, I guess my questions are, A, is that true? And I take it that it is because you're saying that. And then B, if that's true, how do we have jurisdiction? Understood. So unequivocally, we are not challenging the September 24th, 2020 authorization. Our view is that to do so would have been mounting a collateral attack on this court's affirmance of the original certificate order. So that is not our challenge. What flowed from that September 24th, 2020 authorization order, we did submit petitions for review to the commission. And since that time in September of 2020, that's when the two unplanned emergency gas releases occurred, which prompted the commission to issue its separate briefing order, which I agree with the commission. There was no prejudice to my clients by the briefing order because it invited the very discussion we've been begging the commission to have for eight years. So there's no prejudice from that. It is the subsequent February 21st, 2020 order on briefing that is prejudiced my 2020 or 2022. Thank you. Thank you. My apologies. It's the order on briefing that responded to the briefing order that is prejudiced my clients because in considering all of our arguments that the materially changed poor circumstances, the COVID-19 impact on the environmental justice communities and the complete and utter lack of any substantive environmental justice review ever for this project, the commission had the opportunity in writing the order on briefing. To address those issues and it was a borderline apology, such as we're sorry you feel that way because what the commission wrote in its order on briefing was we recognize that and this is it page 15 of that order paragraph. 22, we recognize the legitimate health and safety concerns associated with the siting and operation of the Weymouth compressor station together with the petitioners allegations that outreach and engagement with affected environmental justice communities was insufficient. That's an order of denying re, hearing right? No, 2022 order that is the 2022 order on briefing. So, that was the response to the briefing order. The terminology is very duplicative, but we had the 2021 briefing order and then the 2022 order on brief. And I was reading from order on briefing a paragraph 22, which is page 15. If a citation to the appendix would be helpful, I can find that in a moment. Yeah, that was the that was still part of the re, hearing where they had two headings in this. Right? They were doing two things. Section from page. A 1375, so section a is response to arguments on re, hearing and then on 1380. They start a new section there when they're responding to brief order. Briefing order arguments. Okay. And so. The paragraph 22 is part of re, hearing. Okay. Thank you. Thank you. So same document. Different set it seemed like they were doing two things. Well, it's a little confusing and tell me if you have a different understanding that that is consistent. Thank you. Thank you for that clarification. But if it's enough. Then you did not need to seek reconsideration of the denial of re, hearing. No, because the, the briefing order itself, so. The briefing order of February 18, 2021. Invited all interested parties to comment on 4 categories. Those 4 categories were in light of the concerns expressed regarding public safety. Is it consistent with the commission's responsibilities under the natural gas act? To allow the way with compressor station to enter and remain in service. Question number 2, should the commission reconsider the current operation of the way with compressor station in light of any change circumstances since the project was authorized? For example, are there changes in the way with compressor stations projected air emissions impacts or public safety impacts? The commission should consider we encourage parties to address how any such changes affect the surrounding communities, including environmental justice community. So, you're on the a part that was from the briefing order. Yes. And it's in response to that question that my clients reiterated their years long argument that environmental justice review needs to begin not. Not be revisited, not questioning something that was done before it needs to start. It never started. And the only response to that we got. Was former chairman issuing the devastating comment. That my clients read, which stated. In my opinion, the commission likely aired inciting the way with compressor station where it did that was in his concurrence. My client's reaction was we won and of course, they very much did not. So, let me make sure I don't have additional questions for my colleagues. We'll give the commission a chance to argue and we'll give it a little bit time for rebuttal. Thank you very much. Mr. Fish. Mr. Chief judge may please the court Jared fish for the Federal Energy Regulatory Commission. I'd like to begin with a couple of jurisdictional points across the two cases if I may that go to your honors questions. First, it is true in a case number 22 dash 1147, the authorization order proceeding. The petitioners did not challenge the aggrieving order. And a petitioner must challenge the aggrieving order under section 717 are of the natural gas act. And this court's precedent and city of a conto in order to preserve their right to seek judicial review. And there is no response to our argument and petitioners reply brief that petitioners failed to challenge the aggrieving order here. And even if this court were to somehow deem the 2022 order to be an aggrieving order, which it is not. It merely sustains the authorization order for 2020. You're correct Mr. Chief judge that petitioners had to seek rehearing section 717. R. A. is clear a party that seeks to challenge an aggrieving order must seek rehearing before the commission before it may petition for judicial review. So, that takes there is no jurisdiction to get a rule is clear. I really do get that. But what this briefing decision order on briefing decision is anything. But clearly try to sort of categorize things into hearing order on briefing, but then they insist they never reopened anything. And yet, from their perspective, this was their shot to really tell the story about why this thing shouldn't be allowed to sort of continue operating because of all the mistakes that were made. The commission essentially said in the paragraph he cited. Yeah, we screwed up. Rehearing tonight, and it's and for them to it's such an unusual animal. Even some of the commissioners thought it was quite unusual or improper animal. Such an unusual animal with this round. Free was, I feel like it's a little unfair to put on them not to know. How to challenge it, because on the one hand, you're not disputing the. The original motion to authorize the plant to come on line, because the usual rules for that the boxes were all checked and it had complied with everything was supposed to comply with and it should come online. We hadn't had the blow downs at that point. And so they're like, no, what we're really upset about is this, this hybrid, whatever it is a decision on briefing where they essentially said, come to us, tell us about your concerns. And they agreed with us that we were right. And nothing happens. I don't think you're supposed to know that to do another re, hearing on this thing that was called already in order on hearing. It's just awful. It feels. I credit for having done the work and confessed its need to change going forward, but it's. I feel the technical people are real people are getting lost in the technical technicalities of all of this. I understand the concerns as well. And I also understand that this was kind of an unusual animal, but that. We have to look at what petitioners were actually arguing and they're hearing requests. They did raise the load out of it. They did address over 19. They did address environmental justice concerns, which are the very issues they are raising here. The problem is the, what they sought for the commission to do was to use it rule 716 to reopen the certificate order record. And that is simply not something that the commission can do once once a 6 day period to challenge the certificate order had passed. And more importantly, once this court, and it's 2018 kind of decision decided, finally, that the certificate order and all of the environmental reviews there under were lawful. So, at the end of the day, the briefing order was a way for the commission to assure itself. It had all the information it needed to issue a reason decision on hearing to determine whether it should revisit the authorization order from 2020. And it, it, it acknowledged that all those briefs that were submitted in response to the briefing order would be made part of the record. That's precisely why footnote 53 of the 2022 order said, Jay, a 1377, the commission explained that petitioners reopening claim, which is the only claim they have here. That's jurisdictionally preserved and the authorization order proceeding. That claim was moot because the commission did state in the briefing order, it would make any submissions part of the record and critically. Why isn't actually a reopening? I mean, why is it why isn't actually why wasn't this order on briefing a reopening? Because it asked for not just. Rehearing briefs and ask for evidence and ask for factual information. So, why aren't they right to understand this for all practical intents and purposes? However, that mission labels it's headings within its decision. When you ask for new evidence. New briefing arguments about events that post date. The facility coming online. And it's not a reopening. How is it not a reopening? Well, that might have been a reopening for purposes of considering the authorization order. So, the time between when the authorization order was issued in the time that the commission issued a 2022 order, that's very different from seeking a reopening of the certificate order record, which is something that the commission said. Explicitly in the 2022 order, it could not do it was accepting arguments on the blow down events over 19 impacts environmental justice impacts. All of those events did post a certificate order, but the key here is those events were relevant to the determination on rehearing to determine if Algonquin was out of compliance with any of the conditions on the certificate order itself. And so the commission found at paragraph 16, 24, 25 of the rehearing order. I'm sorry, paragraph 17 to 19 of the rehearing or that's a 1377 to 79 that there is no allegation that Algonquin was out of compliance with its air permits. No allegation it was out of compliance with its pipeline hazardous material safety administration regulations, or any other condition of the certificate order. And because the condition precedent, the continuing operation of the compressor station is continuing compliance with the conditions of the certificate order. The commission found no basis to revisit the authorization order, but that's the kind of ironic thing here is that commission found and I don't take them to dispute that Algonquin was in full compliance with certificate order. And so, of course, the authorization order is fine. We have here is a decision where this is. Algonquin was in compliance with the law. The commission that was not and that's what we said we didn't do it right. We didn't and we're going to change it going forward. I think it's more than this wasn't our best work. I think they say we didn't do it right. Well, we're changing our procedures going forward. I think that's, you know, we created an office of public participation to engage with environmental justice communities earlier. I don't think that procedural revision and necessarily means you got it wrong substantively. Yes, there are. Mr. Commissioner, I'm not saying for sure that adopting this new office, this new approach suggest anything was wrong. And you're absolutely right. We wouldn't do that. It's their sentence. That's just allegations that outreach and engaging with effective environmental justice communities was insufficient. They mean legally insufficient. I'm not sure your honor, but it's it that wasn't something that the commission could reconsider as the commission stated in the twenty twenty two order anyway. So, you know, commissioners statements in a in a subsequent order that, you know, I commissioner, whoever personally feel that we should have come out differently. You know, that's not expounded upon because the commission as a legal matter could not go back and reopen the certificate order proceeding, which already address the issues of environment. But it could have said we shouldn't know. No, maybe it couldn't have. Tell me this. Could it have said we shouldn't have authorized operation or could it not have? Because the only requirement for authorizing operation is whether Algonquin did things right. Not whether the commission did things right. Right. The condition precedent authorizing operation is compliance with the conditions in the certificate order. That's where the certificate order has continuing life because the conditions, you know, once it once the project is approved for construction and operation, that's done. But as continuing life, because the conditions on it, especially environmental conditions and appendix B of the certificate order and need to be complied with. That's what the commission means when it has a when it said it has a continuing public interest obligation to ensure that the compressor station is operating in a way that was, you know, contemplated by the certificate order itself. But that's very different from from suggesting that there was a legal right to go back and reopen. If I could, if I could turn to twenty two dash eleven forty six briefly, the extension order proceeding. Judge Millett, you asked questions about what petitioners injury is. I think that sounds in standing. I would submit that the commission administratively resolved any possible injury that would have derived from a sub delegation and be the thirty four minute decision by more than one year later. Having the full commission vote and ratify the good cause determination in the original decision. And I think it's really important petitioners know where challenge our good cause finding that Algonquin was trying to get wetlands and zoning ordinance permits from Massachusetts. It couldn't that our branch chief was monitoring that situation was aware of the reason for the delays and so was in a position to render a determination on Algonquin's extension request upon upon receipt. It would be we would be a different matter as far as standing is concerned, if petitioners actually were challenging the good cause. Thank you council. Thank you. We'll hear from intervenors council down Mr. Marble. Good morning. Your honor Jeremy Marwell for the industry intervenors just a few quick questions a few quick points and I'm happy to answer questions. First, I do think it is there was some questioning about reopening and the record. I do think it's important to maintain the context that this court is often called upon to adjudicate a challenge to the original certificate authorizing construction and operation. And here we have challenges to implementation orders. And so there would be kind of overlap overlapping records, but visible of finality for the original certificate authorizes Algonquin and other companies to invest huge sums of money. That is a very important principle and I think it's reflected in first order. Second, as to the case, 1, 1, 4, 7, putting aside the various threshold questions, I think the reality is mission undertook an extensive additional process that allowed it to consider all of the petitioners concerns with regard to post certificate events. And as the commission said, mission specifically found there were no violations of the certificate order, no violations of the air permit, no violations of the regulations that govern safety and operation of these facilities. And I don't take petitioners challenging those points or really the commission's broader findings with regard to why it was, there was no basis to set aside. The authorization order, and then finally, as to the question of agreement and what petitioners might have needed to do. I understand agreement in the statute to be tied to the concept of standing. And I understand petitioners claim of standing here to be they're concerned about the operation of the station in that community that we were authorized to do that by the 2020 order, which petitioners have made clear. They are not challenging for it. So, if there are any further questions, I'm happy to answer. On 1147, you went to the merits and do you think that we should go to the merits? Oh, I'm sorry if I was not clear when I made the point about agreement. That's what I understand to be the primary jurisdictional problem there that they didn't name and they've now disclaimed any challenge to the 2020 order. So, I do think that under city of a conto and the natural gas act, what they should have done is named. Not my, not my client, but I think what they could have done and what they did in the 1, 1, 4, 6 case was to name both orders. They named the in service authorization, 2020 authorization. And the 2022 order, it was both an order on rehearing and an order that went beyond a typical order. And I think that's the, the statutory jurisdictional problem for them. But I, I take judgment let's point that this was an unusual extra procedure that the commission did. And so that's why I went to the merits. Of course. Thank you. Thank you. Mr. Hayden. We'll give you 2 minutes for rebuttal. Bringing everything to this court's attention, there are still 3 matters being held in abeyance. Those are docket numbers, 21, 1155, 1138, 1153. Those are challenges raised by the intervenors to the original briefing order in terms of whether the commission had the authority to do that in the 1st place. We're not focused on that for purposes of today's proceeding. So, the argument submitted by the petitioners is that the commission has opened the door through this briefing order process, which by all accounts is a very unique. And unprecedented process, it doesn't seem that it's ever been done before. The next time I have to challenge something of this nature, perhaps I'll throw the kitchen sink at it. But we certainly don't believe that there's been any prejudice that's resulted from the choices of which orders to appeal because the arguments are understood by all. We agree to disagree on the decision making that under underlay them. But we do believe that everything is properly presented for this sports consideration. Simply as an aside, the state licenses and permits that are required for the office of coastal zone management to issue the consistency determination, which is required under the original certificate order. They're still not finalized. The petitioners have been successful in vacating a chapter 91 waterways licenses in Massachusetts, which has now been remanded back to the Massachusetts Department of Environmental Protection is going to be scheduled for further administrative proceedings and trial. This autumn, and if we are successful there, we would be revisiting the commission seeking to vacate the, the ability for this facility to continue operating because then the coastal zone management certificate of compliance would would no longer be in effect. So, my clients respectfully implore this court to consider the authority that has been cited by this court in the scene of Sarah L. And by the 4th Circuit and the friends of Buckingham decision, recognizing that historically environmental justice communities have been marginalized, underrepresented and ignored. It is never ever too late to give environmental justice consideration to the people who are living and breathing and working and recreating near this facility. We respectfully ask for this court to require the commission to conduct an environmental justice. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Tatel